UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

BOSTON, ss

|  |  |  |
|---|---|---|
| JAMAINE GAITOR ) | | |
|     Plaintiff ) | | |
| ) | | |
| v. ) | | CIVIL ACTION NO. 1:21-CV-12079-MLW |
| ) | | |
| CITY OF BOSTON – SOAR BOSTON ) | | |
| LEEROY PEEPLES, ) | | |
| TALIA WRIGHT-RIVERA, and ) | | |
| WASCAR CASTILLO ) | | |
|     Defendants ) | | |

**CONSOLIDATED WITH**

|  |  |  |
|---|---|---|
| STEPHEN D. POWELL ) | | |
|     Plaintiff ) | | |
| ) | | |
| v. ) | | CIVIL ACTION NO. 1:21-CV-12093-MLW |
| ) | | |
| CITY OF BOSTON – SOAR BOSTON ) | | |
| LEEROY PEEPLES, ) | | |
| TALIA WRIGHT-RIVERA, and ) | | |
| WASCAR CASTILLO ) | | |
|     Defendants ) | | |

|  |  |  |
|---|---|---|
| SEAN D. PITTS, ) | | |
|     Plaintiff ) | | |
| ) | | |
| v. ) | | CIVIL ACTION NO. 1:21-CV-12091-MLW |
| ) | | |
| CITY OF BOSTON – SOAR BOSTON ) | | |
| LEEROY PEEPLES, ) | | |
| TALIA WRIGHT-RIVERA, and ) | | |
| WASCAR CASTILLO ) | | |
|     Defendants ) | | |

|   |   |
|---|---|
| UNDINI SANZ, <br>     Plaintiff <br><br> v. <br><br> CITY OF BOSTON – SOAR BOSTON <br> LEEROY PEEPLES, <br> TALIA WRIGHT-RIVERA, and <br> WASCAR CASTILLO <br>     Defendants | CIVIL ACTION NO. 1:22-CV-10042-MLW |

# **PLAINTIFF JAMAINE GAITOR'S FIRST AMENDED COMPLAINT**

## **Parties, Jurisdiction and Venue**

1. Plaintiff, Jamaine Gaitor ("Plaintiff) is an individual residing at 259 Prospect Hill Street, Raynham MA 02767. He is 44 years old, and born on 7/14/77, and Black.

2. Defendant City of Boston – SOAR Boston ("SOAR"), which stands for Street Outreach Advocacy and Response. SOAR is the City's gang intervention program, located at 1483 Tremont Street, Dorchester, MA 02118.

3. Defendant Leeroy Peeples (hereinafter "Defendant Peeples") is an individual residing at 5 Linden Park Drive, Randolph, MA 02368, and upon information and belief at all relevant times was the Strategy and Operations Manager at SOAR with managerial authority over all of SOAR's employees.

4. Defendant Talia Wright-Rivera (hereinafter "Defendant Wright-Rivera") is an individual residing at 24 Rosewood Street, Mattapan, MA, 02126, and upon information and belief was at all relevant times was the Director of SOAR with managerial authority over all of its employees.

5. Defendant Wascar Castillo (hereinafter "Defendant Castillo") (collectively "Defendants") is an individual with a business address of 1483 Tremont Street, Dorchester MA 02118 and upon information and belief at all relevant times was the Director of Human Resources of SOAR.

6. The Court has jurisdiction over this case pursuant to M.G.L. c. 233A § 2 and M.G.L. c. 212 § 4, and venue is appropriate because most or all of the parties reside in or have a business address in Suffolk County.

**Facts**

7. Plaintiff reasserts the facts set forth in paragraphs 1-6.

8. SOAR is a gang intervention program funded and managed by the City of Boston.

9. At all relevant times, The SOAR program employed approximately 33 individuals, of whom approximately 31 are people of color. Black employees were largely Streetworkers and Streetworker Supervisors, while Hispanics were largely in management rolls.

10. In September 2006, Plaintiff was hired by the City of Boston as Streetworker in gang intervention and prevention. In approximately 2019 the program was renamed as the SOAR Boston program and he was then streetworker for the City doing the same job as he had peviously.

11. From 2008 to his termination, Plaintiff was a Union Steward in the SOAR office for SEIU Local 888, which was the Union to which most SOAR employees belonged.

12. Prior to Defendant Wright-Rivera becoming the Director of the Program, the atmosphere in the program was collegial and like a family.

13. Defendant Wright Rivera was a Streetworker in 2006 for the City's gang intervention program; she left at some point thereafter and was rehired as the Director of the SOAR program in July 2019.

14. When Defendant Wright Rivera became the Director, she began to bully and harass older workers and workers who were Union stewards, including Plaintiff.

15. Defendant Wright Rivera would say at roll call in the afternoon, in front of the entire SOAR staff, that anyone over 40 was too old and should find a new job.

16. After stating this one time at roll call, Wright Rivera turned to Plaintiff and asked why he was still there.

17. From July 2019 to June 2020, Defendant Wright Rivera would often target certain older individuals for discipline and ultimately termination, including workers Robert Miller, Jackie Perry and Robyn Christian, all over the age of 50. All of these workers were also dark-skinnned Black.

18. Plaintiff complained to Wright Rivera and Peeples about the harassment of older workers at SOAR. Nothing changed.

19. From about July 2019 to March 2020, Defendants Wright Rivera and Leeroy Peeples would harass and make fun of Senior Streetworker, Robert Miller, a Black employee, because he had several disabilities resulting from his ongoing stage-4 cancer treatment, including incontinence. For instance, Defendants Peeples and Wright-Rivera would not allow Miller to ride the van, even while other, non-disabled workers could. He had to walk. They refused to accommodate his disability and made fun of his incontinence.

20. Wright-Rivera and Peeples harassed Robert Miller, who had a disability and stage four cancer. They refused to accommodate his disability. Miller had to wear Depends as a result of his disability and they made fun of him, both in front of him and behind his back for it.

21. On one occasion that the managers let Miller drive the van, Miller had to pull over to relieve himself. When Peeples found out about this, he told Plaintiff "we got him." Plaintiff refused to participate in this. Miller died within a month of that incident.

22. Plaintiff complained to Wright Rivera and Peeples about the way they treated Miller.

23. Defendant Peeples repeatedly told Plaintiff in or around 2019 that "we need to get Miller out of here, that is a supervisory position that someone else could move into." Plaintiff refused to go along with Peeples' scheme to do so.

24. Throughout 2019, coworker Jackie Perry, also Black, and in her 60's, was harassed by Wright Rivera for her age and disability. She had had recent back surgery, and was moving more slowly. Defendant Peeples called Ms. Perry "dead weight" and "too slow."

25. As a result of this bullying, Jackie Perry transferred to a position at the Boston Public Library.

26. Jackie Perry also drafted a grievance as a result of this behavior, claiming age and disability discrimination. She gave it to Plaintiff as Union Steward to submit to the Union.

27. Robyn Christian, also a Black woman and senior streetworker supervisor, was targeted by Peeples. He said Christian was too old and had been there too long. She is 53. She had been there since program started.

28. Plaintiff suffers from Anxiety, Depression, Post Traumatic Stress Disorder (PTSD) and claustrophobia as a result of his active duty in the military during the Iraqi war.

29. On or about January 2020, Talia Wright-Rivera, Director of SOAR, made it mandatory for the streetworkers to drive around the city in crowded vans. In the many years that the program existed, this has never been a requirement. Workers had always been allowed to take their own car and meet the team at a given location.

30. Plaintiff asked if he could use his car instead, as an accommodation to his disability. Talia Wright-Rivera told Plaintiff that he was required to get into the crowded van anyway.

31. After Plaintiff complied and got into the crowded van that day, he had a panic attack in front of Wright Rivera and his colleagues.

32. At about this same time, January or February 2020, Plaintiff provided a doctor's note to his employer, which again stated that he had disability and need for accommodation.

33. Without engaging in any meaningful dialog about his disability or its accommodation, the following week Defendant Wright-Rivera told Plaintiff again that he had to get into the crowded van along with the others, despite witnessing his panic attack previously and receiving a doctor's note regarding his disability and request for an accommodation.

34. Between his claustrophobia and concerns about the lack of protocols around Covid-19, Plaintff took a personal day to avoid getting in the van with other employees. He was disciplined for doing so.

35. Another Streetworker, Stephen "Donnie" Powell, also objected to getting on the crowded van, citing his disabilities. He was told to get on anyway too.

36. When Powell was to meet with Wright-Rivera and Wascar Castillo, Director of Human Resources, about an accommodation, Mr. Powell asked Plaintiff, as his union steward, to accompany him, fearing it would be a disciplinary procedure. Rivera and Castillo made Plaintiff leave, asserting that if he stayed, it would then turn into a disciplinary meeting for Mr. Powell.

37. In July of 2020, Plaintiff applied for and received a promotion to Resource Coordinator. With that promotion also came a four-month probationary period. He reported to Davo Jefferson, also a Black Streetworker Supervisor, who only gave him positive feedback and raised no performance issues with him.

38. On or about October 8, 2020, in a regular daily roll call meeting of about 30 people, the group raised a complaint with Wright-Rivera for not following Covid-19 protocols, specifically that employees had no Personal Protective Equipment (PPE), no plastic shields for cubicles or desks, no one coming through every two hours to wipe down common areas, no hot water in the building, and no one screening individuals for Covid- 19 symptoms when they came into the building.

39. In response, Wright-Rivera gave all employees five throw-away masks and told them to keep recycling them.

40. Wright-Rivera still required employees to get into the van together. She told them that if they had a problem then they should use FMLA or to "do what they have to do." This, despite disciplining Plaintiff for taking a personal day instead of getting on the van.

41. After this, many coworkers complained to Plaintiff as the Union Representative. A letter was written as well, which Plaintiff sent out, to the Boston Public Health Commission, Mayor Marty Walsh, Marty Martinez, the Chief of Human Services, a few Boston City Council members and others, complaining of the lack of Covid-19 protocols in place. Plaintiff did this anonymously, knowing that he would be retaliated against by Defendants if they found out that he had sent it, and he would likely be terminated.

42. Plaintiff filed numerous grievances on his own behalf and on behalf of coworkers as a result of Defendant's inaction relative to Covid-19 protocols, and for their treatment of older or disabled workers, or for retaliation against Union Stewards.

43. When employees would attempt to speak at the office, including just a few people in the kitchen, Defendants Peeples and Wright-Rivera would immediately break it up, fearing that they were discussing Union matters. This was especially true if they saw someone talking specifically to Plaintiff or Tariq Jamison, another Union Steward. Defendants would say that the door needed to be kept open. Peeples once remarked walking way that he would like to "throw a bomb in there and blow [it] up."

44. On occasion when Wright Rivera would come in and break up a discussion, she would tell them, "the union can't help you now."

45. In late October Defendants discovered that Plaintiff had sent this letter to the BPHC and others regarding the lack of Covid-19 protocols in place at SOAR.

46. On November 2, 2020, while Plaintiff was on vacation, Defendant Wascar Castillo, Director of Human Resources, called him and stated that he heard that Plaintiff had complained of a hostile work environment. Plaintiff told him that he never complained about the hostile work environment, despite there being one.

47. Plaintiff then requested that he please record the current meeting. Defendant Castillo told Plaintiff that everything they discussed would be confidential. Plaintiff told him that Wright-Rivera and Peeples have a history of retaliation and he did not want the contents of their discussion divulged to them. Plaintiff told Castillo that he knew they were trying to fire him. He told Castillo that he heard everything out of Talia's office, including that Talia "wanted [him] gone."

48. Plaintiff's office was close enough to Wright Rivera's that he heard her ask a member of Labor Relations how she could extend certain people's probation. Just asking questions at roll call would result in discipline and an extension of probation.

49. Contrary to their agreement. Defendant Castillo spoke to Wright-Rivera and Peeples about the confidential conversation, despite knowing that they would retaliate against Plaintiff.

50. On November 3, 2020, while on his vacation, a constable came and dropped off a letter to Plaintiff signed by Wright-Rivera and Castillo. The letter stated that Plaintiff was terminated because he failed to meet expectations as a Resource Coordinator while on promotional probation. It also stated that Plaintiff made false statements but did not specify what those were. He had never received a wanting for his performance as Resource Coordinator.

51. On November 4, 2020 his probationary period was to have ended.

52. Per the City's own policy, Plaintiff was supposed to be returned to his old position if he didn't ultimately retain the Coordinator role during the probationary period. This did not occur.

53. Plaintiff was making approximately $62,500.00 annually as Resource Coordinator for the SOAR program.

54. Plaintiff was out of work and seeking a job from November 2020 to May 2021, when he obtained a position with the state as Veteran's Representative, making $47,500.00 per year.

55. Plaintiff was fired without any progressive discipline or with the Defendants fully asserting the reasons for it , in violation of Defendants' own policies and procedures.

56. Plaintiff and his Black coworkers were disciplined for infractions for which neither White employees nor Hispanic employees would have been disciplined.

57. Plaintiff has satisfied all prerequisites to bringing this action.

## COUNT I
## Discrimination based on Plaintiff's race and color in violation of M.G.L. c.151B section 4(1)
*Defendant City of Boston*

58. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

59. Defendant City of Boston's actions constitute disparate impact discrimination based on Plaintiff's race and color, and for other employees so situated, in violation of M.G.L. c.151B sec.4(1).

60. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

61. Defendant is liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT II
### Discrimination based on Plaintiff's race and color in violation of Title VII, 42 U.S.C. section 2000e-2(a)(1)
*Defendant City of Boston*

62. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

63. Defendant City of Boston's actions constitute disparate discrimination based on Plaintiff's race and color, and for other employees so situated, in violation of 42 U.S.C. section 2000e-2(a)(1).

64. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

65. Defendant is liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT III
### Discrimination based on Plaintiff's age in violation of 29 U.S.C. section 621 et seq.
*Defendant City of Boston*

66. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

67. Defendant City of Boston's actions constitute discrimination based on Plaintiff's age, in violation of 42 U.S.C. section 2000e-2(a)(1).

68. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

69. Defendant is liable for Plaintiff's lost wages, front and back pay, multiple damages, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT IV
### Failure to accommodate plaintiff's disability in violation of M.G.L. c.151B, sec. 4(16)
*As to Defendant City of Boston*

70. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

71. Defendant City of Boston's actions constitute a failure to accommodate Plaintiff's disability, in violation of M.G.L. c.151B, sec. 4(16).

72. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

73. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT V
### Failure to accommodate plaintiff's disability in violation of 42 U.S.C. sec. 12111
*As to Defendant City of Boston*

78. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

79. This claim has been withdrawn as to the Individual Defendants.

80. Defendant City of Boston's actions constitute a failure to accommodate his disability, in violation of 42 U.S.C. sec. 12111.

81. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

82. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VI
### Retaliation in violation of M.G.L. c.151B sec. 4(4)
*All Defendants*

83. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

84. Defendants' actions constitute retaliation, in violation of M.G.L. c.151B sec. 4(4).

85. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

86. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VII
### Retaliation in violation of 42 U.S.C. 2000e-3(a)
*As to Defendant City of Boston*

87. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

88. Defendant City of Boston's actions constitute retaliation, in violation of 42 U.S.C. 2000e-3(a).

89. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

90. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VIII
### Unlawful aiding and abetting of discriminatory actions in violation of M.G.L. c.151B sec. 4(5)
*All Defendants*

91. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

92. Defendants' actions constitute aiding and abetting in discriminatory acts, in violation of M.G.L.c.151B sec. 4(5).

93. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

94. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT IX
### Unlawful interference with Plaintiff's rights under the anti-discrimination statute

**in violation of M.G.L. 151B. sec. 4(4A)**
*All Defendants*

95. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

96. Defendants' actions constitute unlawful interference with the Plaintiff's enjoyment of his employment rights, in violation of M.G.L.c.151B sec. 4(4A).

97. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

98. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT X
**Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b)(1)**
*Defendant City of Boston*

99. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

100. Defendant City of Boston's actions constitute retaliation for disclosing a violation of the Covid-19 mandate, which was a risk to public health and safety, in violation of M.G.L. c.149, sec. 185(b)(1).

101. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

102. Defendant is liable for three times the amount of Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XI
**Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b)(3)**
*Defendant City of Boston*

103. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

104. Defendants' actions constitute retaliation for Plaintiff's refusal to participate in actions which violate the law or which put public health or safety at risk, in violation of M.G.L. c.149, sec. 185(b)(3).

105. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

106. Defendant is liable for three times the amount of Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

### COUNT XII
### Intentional Infliction of Emotional Distress
*All Defendants*

107. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

108. Defendants' actions constitute intentional infliction of emotional distress.

109. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

110. Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

### COUNT XIII
### Discrimination based on Plaintiff's age in violation of
### M.G.L. c.151B, section 4 (1C)
*Defendant City of Boston*

111. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

112. Defendant City of Boston's actions constitute discrimination based on Plaintiff's age, in violation of M.G.L. c.151B, section 4 (1C).

113. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

114. Defendant is liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

### COUNT IXV
### Negligent Hiring and Promotion, under
### M.G.L. c. 258, sec. 10(j)
*Defendant City of Boston*

115. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

116. Defendant City of Boston's actions constitute negligent hiring and promotion of the individual defendants who perpetrated unlawful actions against Plaintiff.

117. As a result of Defendant's actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

118. Defendant is liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

WHEREFORE, the Plaintiff requests that the Court:

a. Award the full amount of his damages incurred as a result of Defendants' discriminatory actions, including without limit lost back and front pay, multiple damages or punitive damages, reasonable attorneys' fees and costs incurred;

b. Award the Plaintiff such other and further relief as the Court deems appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Jamaine Gaitor

By his attorney,

*/s/ Janet Ruggieri*
Janet Ruggieri, BBO#634431
Murphy & Rudolf, LLP
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
ruggieri@murphyrudolf.com

Dated: June 10, 2022