UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JERMAINE GAITOR, </br></br> Plaintiff, </br></br> v. </br></br> CITY OF BOSTON – SOAR BOSTON, LEEROY PEEPLES, TALIA WRIGHT-RIVERA, and WASCAR CASTILLO </br></br> Defendants. | Civil Action No. 21-CV-12079-AK |

CONSOLIDATED WITH

|  |  |
|---|---|
| SEAN D. PITTS, </br></br> Plaintiff, </br></br> v. </br></br> CITY OF BOSTON – SOAR BOSTON, LEEROY PEEPLES, </br></br> Defendants. | Civil Action No. 21-CV-12091-AK |

AND

|  |  |
|---|---|
| STEPHEN D. POWELL, </br></br> Plaintiff, </br></br> v. </br></br> CITY OF BOSTON – SOAR BOSTON, LEEROY PEEPLES, TALIA WRIGHT-RIVERA, </br></br> Defendants. | Civil Action No. 21-CV-12093-AK |

1

AND

| | |
|---|---|
| UNDINI SANZ, )<br>)<br>   Plaintiff, )<br>) | |
| v. ) | Civil Action No. 22-CV-10042-AK |
| )<br>CITY OF BOSTON – SOAR BOSTON, )<br>LEEROY PEEPLES, TALIA WRIGHT- )<br>RIVERA, )<br>)<br>   Defendants. )<br>) | |

AND

| | |
|---|---|
| TERECK JAMISON, )<br>)<br>   Plaintiff, )<br>) | |
| v. ) | Civil Action No. 22-CV-11055-AK |
| )<br>CITY OF BOSTON – SOAR BOSTON )<br>)<br>   Defendant. )<br>) | |

**MEMORANDUM AND ORDER**
**ON PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINTS**

**ANGEL KELLEY, D.J.**

  This matter involves five consolidated cases with plaintiffs, Jermaine Gaitor, Stephen D. Powell, Sean Pitts, Undini Sanz, and Tereck Jamison ("Plaintiffs"), who were employees of Street Outreach and Advocacy and Response ("SOAR"), a City of Boston gang intervention and prevention program. The Plaintiffs brought this cause of action alleging a range of claims, including violation of the Massachusetts Whistleblower Act, age discrimination, disparate impact discrimination based on race, intentional infliction of emotional distress, and retaliation. Most

2

recently, Plaintiffs moved to amend their complaints on April 4, 2024, to add claims for deprivation of rights under 42 U.S.C. § 1983 due to a state-created danger and violation of the Plaintiffs' equal protection rights.

## I.     LEGAL STANDARD

After a responsive pleading has been filed by the defendant, a plaintiff may amend their pleading as a matter of course within 21 days or with the permission of the court or consent of the opposing party to amend their complaint.  Fed. R. Civ. P. 15(a).  Leave to amend should be "freely given when justice so requires," but an amendment should be denied "on the basis of undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party . . . [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  The burden increases on the plaintiff the longer the case progresses.  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).  "When sought before the close of discovery, amendment is deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  Crowl v. M. Chin Realty Tr., 607 F. Supp. 2d 245, 246 (D. Mass. 2009) (citing Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).

When evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  To survive dismissal, a complaint must contain sufficient factual material to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the Defendants are liable for the misconduct alleged.  Ocasio-Hernandez v.

Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (quoting Boston & Me. Corp. v. Hampton, 987 F.2d 855, 868 (1st Cir. 1993)).

## II.  DISCUSSION

This motion revolves around an email Defendant Talia Wright-Rivera sent on June 4, 2020, to Assistant District Attorney Luke Goldworm. In the body of her email, Wright-Rivera wrote, "In preparation for our meeting today at noon, please see the google doc with updates on the youth referred to us. Looking forward to discussing more." [Dkt. 187-5 at 1]. Along with the email, she had attached a document with a table that included columns with the last name, first name, age, gang affiliation, and assigned streetworker for 15 youth. **[**Id. at 3]. Plaintiffs received this email during discovery and now allege that Talia Wright-Rivera "and potentially others . . . were feeding information, including personal data, collected by the Streetworkers (including names, addresses,[1] ages, gang affiliation, and Streetworker assigned) to the Suffolk County District Attorney's Office," without the knowledge or consent of SOAR employees. [Dkt. 184 at 7, 8]. Based on this, Plaintiffs move to amend their complaints to add claims for deprivation of rights under 42 U.S.C. § 1983 due to a state-created danger and violation of Plaintiffs' equal protections rights, as well as a violation of Massachusetts record-keeping laws. [Dkt. 184 at 2]. Defendants argue that Plaintiffs' motion to amend should be denied for futility

---

[1] As Defendants point out [Dkt. 187 at 5 n.1], Plaintiffs assert in both of their briefs that the information sent to the Suffolk County District Attorney's Office ("DA's Office") includes "addresses" [Dkt. 192 at 3], but no addresses are included in the email attachment. [Dkt. 184-2 at 2, 4, 7]

4

"because the proposed additional causes of action fail to state a claim upon which relief could be granted." [Dkt. 187 at 8].

### a. State-Created Danger

The Due Process Clause of the Fourteenth Amendment does not generally impose upon the government an affirmative duty to protect its citizens against third-party private acts of violence (even in the face of a known danger). DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). However, the First Circuit has "recognized that the Due Process Clause may be implicated where the government affirmatively acts to increase the threat to an individual of third-party private harm," under a theory of state-created danger. Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004). To make out a due process claim under the state-created danger doctrine, Plaintiffs must establish:

> (1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff;
> (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public;
> (3) that the act or acts caused the plaintiff's harm; and
> (4) that the state actor's conduct, when viewed in total, shocks the conscience.
>    (i) Where officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger. To show deliberate indifference, the plaintiff must, at a bare minimum, demonstrate that the defendant actually knew of a substantial risk of serious harm and disregarded that risk.

Irish v. Fowler, 979 F.3d 65, 75 (1st Cir. 2020). Applying the state-created-danger theory to the facts of this case, this Court finds that Plaintiffs' proposed claims, as alleged, are futile.

As to the first two elements, Defendants' actions did not create or enhance a danger that was specific to the Plaintiffs (and distinct from a danger to the general public). According to Plaintiffs, Defendants endangered the lives of Plaintiffs by sharing data with the "DA's Office" that the Streetworkers had collected and that "could and likely was used to prosecute . . . gang-

involved youth." [Dkt. 192 at 3]. Plaintiffs assert that if it became known that SOAR was using and collecting information on gang members for law enforcement to use, the Streetworkers' lives would be in danger. [Dkt. 184 at 7]. However, that is not what happened here. Plaintiffs do not point to any evidence to support the claim that the DA's office was using that information to prosecute anyone. In fact, the evidence cuts the other way: SOAR and the DA's office had a memorandum of understanding ("MOU") in place[2] that provided the parameters of the information and sharing between the two city agencies. [See Dkt. 187-3]. Specifically, the MOU states that the purpose of sharing information related to at-risk youth was to ensure that those same youth continued to have access to "services, supports, and supervision" during the COVID-19 pandemic. [Id. at 1]. Moreover, the information at issue was not shared with a suspected gang member or anyone else in the community; it was merely shared internally between two government agencies. As Defendants point out, "There is no evidence that any constituent or gang member was aware of the collaboration between the two government agencies." [Dkt. 187 at 9]. Thus, there is no state-created danger here.

Even if Plaintiffs were able to establish the first and second factors, Plaintiffs have not demonstrated that Defendants' sharing that information with the DA's office caused Plaintiffs harm. In other circuits, state-created danger is "akin to the notion of proximate causation" where cases are "spoken of in terms of 'creating risk' or 'greatly increasing risk,' rather than in terms of 'causing harm.'" Barber v. Overton, 496 F.3d 449, 454 (6th Cir. 2007). In the First Circuit, however, causing harm is the third factor required to establish a state-created danger claim. Irish, 979 F.3d at 74. As a result, the First Circuit has so far only applied this doctrine where law enforcement officers may have played a role in creating or enhancing serious harm to plaintiffs

---

[2] Plaintiffs allege that the information at issue "could and likely was used to prosecute" gang-involved youth. [Dkt. 192 at 3]. However, there is no evidence to support this claim.

perpetrated by private actors.³  As far as the Court is aware, to date, none of the Plaintiffs have been threatened or attacked because of the collaboration between SOAR and the DA's Office. Plaintiffs' theory of *potential* for harm is not *actual* harm.  Thus, the First Circuit's precedents are "worlds apart from the particular circumstances" here.  Ablordeppey v. Walsh, 85 F.4th 27, 34 (1st Cir. 2023).

Lastly, Plaintiffs have not successfully alleged that Defendants were deliberately indifferent—that they affirmatively knew there was a substantial risk of serious harm to Plaintiffs and that they disregarded that risk.  Plaintiffs argue that Defendants "acted with deliberate indifference to the safety of the Plaintiffs by callously and secretly sharing constituent information with the [DA's] Office." [Dkt. 192 at 4].  But this is an unsupported, conclusory statement.  There is no evidence that Defendants made a reasoned decision to deliberately ignore a risk of harm to Plaintiffs.  By creating the MOU, it appears SOAR appreciated the sensitive nature of the information, but even if the Court had found there was a state-created danger, there is no evidence Wright-Rivera or anyone else at SOAR considered whether the information could endanger the lives Streetworkers.  To satisfy the fourth element, Plaintiffs would have to show Defendants actually considered the specific risk at the time they shared the information with the DA's Office, which they have not.

### b. Equal Protection

Plaintiffs next attempt to raise an equal protection claim.  They cite to Mancuso v. Massachusetts Interscholastic Ath'n, Inc., but the issues in that case fell within the

---

[3] See, e.g., Irish, 979 F.3d at 67-68 (applying the doctrine when police officers left a voicemail for a rape suspect, after which he murdered the victim's boyfriend, shot her mother, and kidnapped and raped the victim again); Welch v. City of Biddeford Police Dep't, 12 F.4th 70, 72 (1st Cir. 2021) (considering application of the doctrine where officers responded to death threats by a landlord who later shot the tenants who had reported the threats); Rivera v. Rhode Island, 402 F.3d 27, 30 (1st Cir. 2005) (considering application of the doctrine where a witness was murdered the day before testifying in court and her estate alleged police should have protected her).

context in which an applicable state law vests a decisionmaker with discretionary authority to award or withhold a state benefit. 900 N.E.2d 518, 530 (2009). Plaintiffs cite no authority to suggest the application of Mancuso's legal framework is appropriate here, where Plaintiffs are alleging state actors endangered the lives of employees by sharing specific information related to their work.

Nevertheless, to meet the first element of Plaintiffs' equal protection claim, they must demonstrate they were treated differently than similarly situated individuals by identifying and relating "'specific instances where persons *situated similarly in all relevant aspects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression.'" Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (alteration and omission in original) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)). Plaintiffs have not even identified similarly situated individuals, and certainly not specific instances where Plaintiffs were treated differently.

### c. Massachusetts Record-Keeping Laws

Plaintiffs also seek to add claims under Mass. Gen. Laws ch. 66A and Mass. Gen. Laws ch. 214, § 3B to their amended complaint.[4] However, it has long been held that FIPA does not apply to municipal governments. See Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 280 (1985) ("G. L. c. 66A was not intended to apply to 'units of county, city or town governments'"). Plaintiffs nevertheless try to argue that the City of Boston "eradicated" Spring's holding; therefore, FIPA applies here. [Dkt. 192 at 5-6]. But Plaintiffs misread the City of Boston's City Ordinance Mun. Code ch. 5 § 5-5.37. The City of Boston did not incorporate and adopt the

---

[4] As Defendants point out [Dkt. 187 at 12], even though Plaintiffs seem to be adding two claims, they are actually only adding one: both proposed claims allege a violation of the Massachusetts Fair Information Practices Act ("FIPA").

provisions of FIPA, nor did it eradicate the Supreme Judicial Court's holding in Spring. Essentially, the ordinance stands for the proposition that all information a city agency gathers constitutes public records under the law. City of Boston Mun. Code ch. 5 § 5-5.37. Additionally, the ordinance applies to all information relating to city agencies, regardless of how it is stored and that upon a written request, it must be produced within a reasonable time. Id. The end of the section, however, includes an exemption: "[Ordinance 5-5.37] shall not apply to any data or information exempt from disclosure by State or Federal law or rule of court and is subject to the provisions of G.L. Chapter 66A or any similar Federal law." Plaintiffs seem to believe that this sentence means that the City of Boston "adopted M.G.L. c. 66A in its own ordinance." [Dkt. 192 at 6]. In other words, Plaintiffs read the sentence as meaning that the ordinance does not apply to "any data or information exempt from disclosure by State or Federal law or rule of court" and that the ordinance is also "subject to the provisions of G.L. Chapter 66A." This is incorrect.

"The starting point in statutory interpretation is the language [of the statute] itself." Ardestani v. I.N.S., 502 U.S. 129, 135 (1991) (quoting United States v. James, 478 U.S. 597, 604 (1986)). "Because '[w]ords are to be given the meaning that proper grammar and usage would assign them,' . . . the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" Nielsen v. Preap, 586 U.S. 392, 407-08 (2019). Looking at the grammatical structure of the sentence and the plain meaning of the words, Plaintiffs' reading of the ordinance is not correct. "Data or information" are direct objects modified by the prepositional phrases "exempt from" and "subject to." Thus, the correct reading of the sentence is as follows: The ordinance does not apply to any data or information that is "exempt from disclosure by State or Federal law or rule of court" and that is also "subject to the provisions of

G.L. Chapter 66A." Consequently, the City of Boston's ordinance does not "eradicate" the state court's holding in Spring, which applies here, and Plaintiffs fail to state a claim for violation of FIPA.

### III.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend their Complaints [Dkt. 184] is **DENIED**.

**SO ORDERED.**

Dated: June 24, 2024                                         /s/ Angel Kelley
                                                             Hon. Angel Kelley
                                                             United States District Judge