UNITED STATES DISTRICT COURT

DISTRICT COURT OF MASSACHUSETTS

BOSTON, ss

| | |
|---|---|
| JAMAINE GAITOR )<br>       Plaintiff )<br>v. )<br> )<br>CITY OF BOSTON – SOAR BOSTON )<br>LEEROY PEEPLES, )<br>TALIA WRIGHT-RIVERA, and )<br>WASCAR CASTILLO )<br>       Defendants ) | CIVIL ACTION NO. 1:21-CV-12079-AK |

**CONSOLIDATED WITH**

| | |
|---|---|
| SEAN D. PITTS, )<br>       Plaintiff )<br> )<br>v. )<br> )<br>CITY OF BOSTON – SOAR BOSTON )<br>LEEROY PEEPLES, )<br>TALIA WRIGHT-RIVERA, and )<br>WASCAR CASTILLO )<br>       Defendants ) | CIVIL ACTION NO. 1:21-CV-12091-AK |

and

| | |
|---|---|
| STEPHEN D. POWELL )<br>       Plaintiff )<br>v. )<br> )<br>CITY OF BOSTON – SOAR BOSTON )<br>LEEROY PEEPLES, )<br>TALIA WRIGHT-RIVERA, and )<br>WASCAR CASTILLO )<br>       Defendants ) | CIVIL ACTION NO. 1:21-CV-12093-AK |

1

## DEFENDANTS' MOTION FOR A DIRECTED VERDICT AND INCORPORATED MEMORANDUM IN SUPPORT

Defendants, the City of Boston (the "City"), Talia Wright-Rivera ("Wright-Rivera"), and Wascar Castillo ("Castillo"), move under Fed R. Civ. P. 50(a) for a directed verdict on the Plaintiffs', Jamaine Gaitor ("Gaitor"), Sean D. Pitts ("Pitts"), and Stephen D. Powell ("Powell"), claims of racial disparate impact, age-based hostile work environment, retaliation, and whistleblower retaliation. As grounds therefore, the Defendants state as follows:

### I.  LEGAL STANDARD

The Court may grant a motion for a directed verdict or judgement as a matter of law where "during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). "The party opposing a directed verdict or motion for judgement as a matter of law must provide more than a scintilla of evidence and may not rely on conjecture or speculation." *Segrets, Inc. v. Gillman Knitwear Co., Inc.*, 207 F.3d 56, 65 (1st Cir. 2000) (quotation omitted). Moreover, the court "must not consider the credibility of the witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence." *Id*. A directed verdict is proper where, as here, no reasonable jury could find in the Plaintiffs' favor based on the evidence presented at trial. *Id*.

### II.  ARGUMENT

**A. Defendants Are Entitled To A Directed Verdict On The Plaintiffs' Racial Disparate Impact Claims**

Title VII prohibits employers from utilizing "employment practices that cause […] a disparate impact on the basis of race" unless those practices are justified by business necessity. 42 U.S.C. § 2000e–2(k). Title VII, 42 U.S.C. 2000e-(3)(a) states that, "it shall be an unlawful employment practice for an employer- (1) to fail or refuse to hire or to discharge any individual,

2

or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e-2.

In order to recover on a claim of disparate impact race discrimination, the Plaintiff must prove his or her case by a preponderance of the evidence. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). Disparate impact claims involve employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another. *Ricci v. DeStefano,* 557 US 557, 578 (2009); *Lopez v. Commonwealth*, 463 Mass 696, 709 (2012), citing *School Committee of Braintree v. MCAD*, 377 Mass. 424, 429 (1979).

A disparate impact claim can succeed even where the employer did not intend to discriminate. *See, e.g., Boston Chapter, N.A.A.C.P., Inc. v. Beecher,* 504 F.2d 1017, 1021 (1st Cir.1974). This distinguishes the disparate impact cause of action from the more traditional approach to proving discrimination. A plaintiff starts by "isolating and identifying" the employment practice being challenged. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). A plaintiff must then show that the identified practice "causes a disparate impact on the basis of race." 42 U.S.C. § 2000e–2 (k)(1)(A)(i). This is "essentially a threshold showing of a significant statistical disparity[.]" *Ricci v. DeStefano,* 557 U.S. 557, 587 (2009).

"The necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Tr.,* 487 U.S. 977, 987

(1988). "[S]ubjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases. *Id*. at 991.

Once a plaintiff has made an initial showing of a disparate impact, the burden shifts to the employer. An employer may rebut any initial showing of disparate impact by showing that its use of the challenged practice is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). If the employer makes such a showing, a plaintiff must then show the existence of an "alternative employment practice," 42 U.S.C. § 2000e–2(k)(1)(A)(ii), which "also serve[s] the employer's legitimate interest...." and has a lesser disparate impact on the protected class. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425 (1975). If a plaintiff makes such a showing, and the employer "refuses to adopt such alternative employment practice," then the plaintiff prevails. 42 U.S.C. § 2000e–2 (k)(1)(A)(ii).

When discussing potential disparate impact theories in its order on defendants' motions for summary judgment, the Court concluded that Plaintiffs had failed to make a prima facie case with respect to SOAR's policy of conducting group outreach in vans. Specifically, this Court noted that "the Plaintiffs have failed to establish that there is any imbalance apart from the underlying demographics, as the Van Policy was applicable only to SOAR. To find otherwise would mean any action of SOAR managers would be subject to a disparate impact analysis." (Order at 28). This Court's analysis of the Van Policy was correct in every way. First, the Van Policy was put into place by SOAR management; no other department of BCYF or the City was subject to it. Second, the Van Policy did not create any racial imbalance beyond the underlying racial imbalance between the demographics of the SOAR program and the demographics of BCYF. Finally, to find that the Van Policy could serve as the basis of a disparate impact claim would mean that any action of SOAR management would also be subject to a disparate impact analysis.

4

Despite rejecting the Van Policy as a basis for a disparate impact claim, this Court went on to rule that the Plaintiffs made out a prima facie case for a disparate impact claim on the basis of SOAR management's decision to have employees return to work in May 2020. The Defendants now submit that the Court should once more apply the analysis that it applied to the van policy to the Plaintiffs remaining disparate impact claims based on SOAR's Return to Work and COVID policies.

First, the Return to Work Policy was applicable only to SOAR. SOAR management required employees to return to work in May 2020. The record contains scant evidence about the return to work policies of BCYF departments other than the SOAR program, but this Court may assume at this juncture that SOAR employees returned to work before other BCYF employees.

Second, there is no evidence for racial disparity created by either policy other than the underlying disparity between the demographics of the SOAR program and the demographics of the City workforce or the demographics of BCYF. Appealing to the underlying racial disparity was not sufficient to state a prima facie disparate impact claim with respect to the Van Policy and it is not sufficient to determine that there was a sufficient connection between the alleged disparate impact and the Return to Work Policy based on the evidence presented by the Plaintiffs. See Order at 29 ("Plaintiffs have demonstrated that by April 2020, 26 of SOAR's approximate 31 employees were Black, yet only 30.24% of the City's employees and 39.32% of BCYF's employees, of which SOAR falls within, are Black."). As evidenced by these statistics, the City policy did not "create[] the disparate impact." *Wards Cove*, 490 U.S. at 657. Any disparity is entirely a function of the preexisting racial demographics of the SOAR program. The lack of any racial disparity beyond this preexisting racial imbalance is fatal to a disparate impact claim on the basis of the Return to Work and COVID policies.

If the preexisting racial imbalance were sufficient to prove Plaintiffs' claim, "any action of SOAR managers would be subject to a disparate impact analysis." (Order 28). If the Return to Work and COVID policies may furnish a basis for a disparate impact claim, the same is true of virtually any workplace issue in the SOAR program, or of any decision taken by SOAR management, which by definition would apply only to SOAR and not to other subdepartments of BCYF, and therefore result in a racial imbalance stemming from the underlying demographics of the program.

Plaintiffs have offered no evidence at trial that a City policy that created a racial imbalance: any imbalance is entirely a function of the underlying demographics of the SOAR program. Moreover, Plaintiffs have offered no evidence at trial, other than the racial breakdown of SOAR, that the Return to Work Order and COVID policies fell more harshly on a particular racial group. Conversely, the Defendants have shown that SOAR's Return to Work and COVID policies were necessary to effectively carry out the core function of the program to serve the City's at-risk youth during a historically difficult period. Accordingly, the disparate impact claim fails. For these reasons, this Court should grant a directed verdict on the Plaintiffs' the racial disparate impact claims in favor of the Defendants.

**B. Defendants Are Entitled To A Directed Verdict On The Plaintiffs' Age-Based Hostile Work Environment Claims**

Hostile work environment based on age is a form of unlawful discrimination. See *Rivera–Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 24 (1st Cir. 2001) (abrogated on other grounds by *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002)). In order to prove a hostile work environment claim based on age discrimination, the Plaintiff must provide sufficient evidence from which a reasonable factfinder could determine that the workplace was "permeated with discriminatory intimidation, ridicule, and insult [based on age] that was sufficiently severe or

pervasive to alter the conditions of ... [his/her] employment and create an abusive working environment." *Quiles–Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The offensive conduct, in other words, must be: "[ (1) ] severe [or] pervasive enough to create an objectively hostile or abusive work environment [based on age] and [ (2) ] subjectively perceived by the victim as abusive." *Rivera–Rodríguez*, 265 F.3d at 24 (quoting *Landrau-Romero*, 212 F.3d at 613).

"This is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22. Rather, it "can be determined only by looking at all the circumstances." *Id*. at 23. These circumstances include (but are not limited to) the following: "the frequency of the discriminatory conduct [relating to age]; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Pomales v. Celulares Telefónica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006). The finder of fact must "distinguish between the ordinary, if occasionally unpleasant, [hardship] of the workplace and actual harassment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005). The finder of fact must also determine that "a reasonable person would have felt that it affected the conditions of her employment." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18–19 (1st Cir. 2002) (quoting *Gorski v. N.H. Dep't of Corrs.*, 290 F.3d 466, 474 (1st Cir. 2002)).

During the course of this trial, the Plaintiffs – Gaitor, Pitts, and Powell – failed to present sufficient evidence to prove the elements of their age based hostile work environment claims. The Plaintiffs have alleged several indifferent remarks about employees ages were made by SOAR's management staff. However, Plaintiffs have not demonstrated that these remarks, when considered in their totality, were so severe or pervasive that they contributed to an atmosphere at the SOAR workplace that was abusive and altered the conditions of the Plaintiff's employment. Specifically,

the alleged remarks that Plaintiffs rely on were made by SOAR management about a several employees that were not the Plaintiffs themselves. Plaintiffs have not provided documentary evidence or witnesses whom the remarks were directed at to corroborate that the remarks felt abusive or affected the conditions of their employment. Plaintiffs instead state that the alleged remarks about others' ages somehow affected the conditions of their employment and that they were prevented from advancing their careers at SOAR based on their ages. Yet, despite these claims, the evidence presented at trial clearly shows that Plaintiffs were either promoted, invited to apply for a promotion, or resigned from their position for personal reasons. No evidence has been presented to show that abusive treatment based on age affected the Plaintiff's themselves.

Furthermore, in addition to the lack of interference with Plaintiffs' conditions of employment, the remarks presented by Plaintiffs can hardly be distinguished from the ordinary hardship and occasional unpleasantness of the workplace. The Defendants have shown that any comments related to age made by a Defendant-manager in this case, not including Leroy Peeples, who – despite constant allegations being directed at him by the Plaintiffs over the course of this trial – is not a party to this case, were made out of realistic expectations of the limited career advancement opportunities afforded by the SOAR program. Plaintiffs have not offered a single piece of documentary evidence to the contrary: claiming that they do not communicate by text or email, while simultaneously presenting texts and emails as evidence of their other claims. A reasonable person would not find that a manager giving honest advice about the limited career advancement they can offer as an employer to be an act of abuse. Without any documentary evidence, or testimony by persons to which the harshest alleged comments were directed, to support their claims, it is impossible for the Plaintiffs to have proven their age-based claims by a

preponderance of the evidence. For these reasons, this Court should grant a directed verdict on the Plaintiffs' the age-based hostile work environment claims in favor of the Defendants.

Respectfully submitted,

Dated: October 23, 2025  **CITY OF BOSTON**, **TALIA WRIGHT-RIVERA, and WASCAR CASTILLO**

By its attorneys,

Adam Cederbaum
Corporation Counsel

/s/ Randall Maas
_____
Randall Maas BBO# 684832
Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
617-635-4042
Randall.Maas@boston.gov

### CERTIFICATE OF SERVICE

I, Randall Maas, hereby certify that on October 23 2025, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Randall Maas

_____

Randall Maas

9