**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMAINE GAITOR,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, KIMBERLY PEEPLES, TALIA WRIGHT-RIVERA, and WASCAR CASTILLO,<br><br>Defendants. | Civil Action No. 21-CV-12079-AK |
| SEAN D. PITTS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, KIMBERLY PEEPLES, TALIA WRIGHT-RIVERA, and WASCAR CASTILLO,<br><br>Defendants. | Related Action<br>Civil Action No. 21-CV-12091-AK |
| STEPHEN D. POWELL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON, KIMBERLY PEEPLES, TALIA WRIGHT-RIVERA, and WASCAR CASTILLO,<br><br>Defendants. | Related Action<br>Civil Action No. 21-CV-12093-AK |

# MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ORDER OF TREBLE DAMAGES

**ANGEL KELLEY, D.J.**

Before the Court is Plaintiff Jamaine Gaitor's Motion for Order of Treble Damages against Defendant the City of Boston. [Dkt. 431]. A jury previously returned a verdict in Gaitor's favor on claims for disparate-impact race discrimination and retaliation under the Massachusetts Public Whistleblower Act ("Whistleblower Act"), Mass. G.L. ch. 149 § 185(b). The jury awarded Plaintiff $123,000 in damages. [Dkt. 365]. Gaitor now seeks an order for statutory treble damages under Whistleblower Act. Mass. G. L. ch. 149 § 185(d). For the following reasons, Gaitor's Motion is **DENIED**.

## I. BACKGROUND

Plaintiffs Jamaine Gaitor, Sean Pitts, and Stephen Powell filed a Complaint against Defendants on December 20, 2021, alleging, *inter alia*, claims of discrimination and violations of the Whistleblower Act. On October 14, 2025, the case went to trial in a consolidated case, Gaitor v. City of Boston, No. 21-CV-12079.

The principal facts that are relevant to the instant Motion involve Defendant Talia Wright-Rivera, an employee of the City of Boston and Gaitor's supervisor. Gaitor and Wright-Rivera worked for Street Outreach, Advocacy, and Response ("SOAR"), a gang-intervention and violence program under the City of Boston's Centers for Youth & Families Department. [Dkt. 1-1 at 64-65]. During the height of the COVID-19 pandemic, Wright-Rivera allegedly forced employees—including Gaitor—into crowded vans. [Id. at 68]. On October 9, 2020, Gaitor sent an anonymous letter to the Mayor's Office complaining about Wright-Rivera's practice. [Dkt. 431 at 2]. He transmitted the letter using the email address "SOARboston@gmail.com." [Id.]. Gaitor alleges that Wright-Rivera was angered by this letter and sought to discover the writer's

identity. [Dkt. 237 at 17].

That opportunity arose during a Zoom call. Following the letter, Gaitor separately filed a report to the City of Boston's Labor Relations Committee, alleging that he saw a social media video in which a SOAR employee made a disparaging comment about the organization. [Dkt. 431 at 2]. To respond to this complaint, Wright-Rivera organized an interview with Gaitor via Zoom. [Id.]. However, when Gaitor joined the Zoom call, his username displayed "SOARboston@gmail.com," revealing his identity as the anonymous writer to the Mayor's Office. [Id.]. Wright-Rivera terminated Gaitor days later. [Id. at 3]. Gaitor alleges that this sequence of events demonstrates that Wright-Rivera terminated him because of his connection with the Mayor's Office complaint. [Id.].

In her testimony at trial, Wright-Rivera denied this accusation. Instead, she contended that she terminated Gaitor because his complaint about the other SOAR employee contained false information. [Dkt. 407 at 7-181:19 to 182:2]. However, she also testified that she never watched the underlying video. [Id. at 7-110:5 to :11]. Gaitor thus argues that she had no proof that his complaint was false. [Dkt. 431 at 5].

On October 31, 2025, the jury returned a verdict in Gaitor's favor on his disparate-impact race discrimination and whistleblower-retaliation claims. [See Dkt. 365 ¶¶ 1, 4]. However, they found against Gaitor for his age-discrimination, general-retaliation, and unlawful-interference claims. [See id. ¶¶ 2-3, 5-9]. The jury awarded $53,000 in damages for lost wages and $70,000 in emotional distress damages. [See id. ¶ 11]. The award did not include punitive damages or consideration of age discrimination and whistleblower retaliation. [See id.].

## II. LEGAL STANDARD

The Massachusetts Public Whistleblower Act provides a cause of action for a plaintiff

who suffered a retaliatory adverse employment action as a result of engaging in protected whistleblowing activity. See Mass. G.L. ch. 149 § 185(b). Under the Act, if a plaintiff succeeds at trial and is awarded damages, a court may order a defendant to pay triple (hence, "treble") the amount of awarded damages as additional post-trial relief. Id. § 185(d). To be entitled to such damages, the plaintiff must show that the defendant engaged in conduct that is "outrageous"—that is, "because of . . . evil motive or . . . reckless indifference to the rights of others." Tryon v. Mass. Bay Transp. Auth., 159 N.E.3d 177, 189 (Mass. App. Ct. 2020). This is a high standard; such conduct must be "'so egregious that it warrants public condemnation and punishment' to 'deter such behavior.'" Id. (citing Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59, 75 (Mass. 2009)). For example, this can be "reckless" behavior that is "marked by a lack of caution and careless[ness] of consequences," id. at 190 (internal citations omitted), or "know[ingly] . . . act[ing] unlawfully by interfering with the legally protected rights of the plaintiff," Haddad, 914 N.E.2d. at 73. This is a similar standard to punitive damages. See Tryon, 159 N.E.3d. at 188.

## III. DISCUSSION

Gaitor contends that he is entitled to treble damages from the City of Boston as the employer of Wright-Rivera. Citing Wright-Rivera's trial testimony, Gaitor argues that she acted outrageously by terminating him in retaliation for exercising his right to file a work-related complaint. In the alternative, Gaitor argues that, even if Wright-Rivera did not retaliate and instead terminated him based on allegations that his second report contained false information, she acted egregiously because she did not investigate and confirm those allegations. Finally, Gaitor contends that Wright-Rivera demonstrated reckless indifference to the health of others by forcing employees into crowded vehicles during a global pandemic.

Notably, few courts have awarded treble damages under the Whistleblower Act.

Acknowledging the high threshold for reckless indifference, courts have declined treble damages in situations where employers followed the advice of counsel and state law was uncertain at the time, see Goodrow v. Lane Bryant, Inc., 732 N.E.2d 289, 299 (Mass. 2000); where an employer paid a terminated employee biweekly salary instead of a lump-sum payment of unused vacation time, even though the court held that this practice was unlawful, Dixon v. City of Malden, 984 N.E.2d 261, 266 (Mass. 2013); and where an employer terminated an employee without investigating the complaints underlying the termination decision, Cristo v. Worcester Cnty. Sheriff's Off., 156 N.E.3d 225, 234 (Mass. App. Ct. 2020).

In support of his Motion, Gaitor cites one Massachusetts Appeals Court case in which the court awarded treble damages under the Whistleblower Act. See Tryon, 159 N.E.3d at 177. In Tryon, the plaintiff sued his previous employer, the state public transportation agency, as well as an individual supervisor, Kineavy. Thirteen years prior to the lawsuit, Kineavy had worked under the plaintiff and was the subject of a complaint, filed by plaintiff, that accused Kineavy and others on the team of failing to appear for their scheduled overtime work. Id. at 180. For the next year, Kineavy filed retaliatory complaints against plaintiff, accusing him of "harassment and retaliation." Id. When Kineavy was promoted to the same position as plaintiff, he engaged in further retaliation by spreading rumors about plaintiff to management and, in an effort to compel plaintiff's retirement, suggesting to a supervisor that plaintiff be reassigned to the lesser desirable night shift. Id. Eventually, Kineavy was promoted to a position of authority over plaintiff. Id. at 181. While in his supervisory role, he engineered the timing of plaintiff's layoff to block him from applying for a new position within the agency and then intentionally concealed his role to eschew detection. Id. at 182. In reviewing the superior court's award of treble damages, the court found that these facts were sufficiently egregious from Kineavy. Id. at 190.

As for the state agency, the court awarded treble damages because, as the employer, it decided to hire the individual supervisor despite his lack of basic qualifications for the job. Id. The court also noted that the agency was on notice of the individual supervisor's egregious behavior based on his year-long campaign of complaints, and that the supervisor's rumors went unchecked for years without any effort to verify their basis. Id. On these facts, the court found that treble damages were warranted.

The facts of Tryon are extreme and are not analogous to the instant action. Neither Wright-Rivera's nor the City of Boston's conduct was similar to the defendants in Tryon, and the record here does not warrant an award of treble damages. There are no facts showing that Wright-Rivera engaged in a long-term pattern of retaliation against Gaitor; she terminated him on one occasion after seeing his email username on a Zoom call. These events occurred in the span of several weeks, not sustained over a period of years. Further, there is no suggestion that Wright-Rivera was unqualified for her job, that she influenced any other decisionmakers to retaliate against Gaitor, that the City was put on notice of and intentionally failed to act on her retaliatory conduct, or that Wright-Rivera had a pattern or practice of retaliating against employees who engaged in protected whistleblowing activity. While Gaitor argues that Wright-Rivera's handling of the COVID-19 pandemic was outrageous, those actions are not alleged to be retaliatory adverse employment actions and thus do not provide the basis for treble damages under the Act. In short, while the retaliatory activity here may have warranted a favorable verdict from the jury, it was limited in scope and duration and fails to meet the high bar for treble damages.

## IV. CONCLUSION

Accordingly, Plaintiff's [Dkt. 431] Motion for Order of Treble Damages is **DENIED**.

**SO ORDERED.**

Dated: November 10, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge